WALTER T. and DOLORES RANDALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Randall v. Commissioner
Docket No. 6957-76.
United States Tax Court
T.C. Memo 1978-222; 1978 Tax Ct. Memo LEXIS 296; 37 T.C.M. (CCH) 950; T.C.M. (RIA) 78222; June 12, 1978, Filed *296 Held, petitioners had legal title to land and a two story house thereon. They sustained a casualty or theft loss on the building prior to making a valid gift of the land to the City of Chicago. Held further, the amount of petitioners' charitable contribution and casualty or theft loss deductions determined. Walter T. and Dolores Randall, pro se. Eugene H. Ciranni, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency *297 in petitioners' Federal income tax for the calendar year 1973 in the amount of $ 2,471.50. The issues for decision are whether petitioners are entitled to (1) charitable contribution deductions in the amount of $ 4,379; and (2) a casualty or theft loss deduction in the amount of $ 8,400. FINDINGS OF FACT Petitioners Walter T. and Dolores Randall, husband and wife, resided in East Palo Alto, California at the time the petition herein was filed. They timely filed a joint Federal income tax return for the 1973 taxable year with the district director, internal revenue service, Fresno, California. In 1957 petitioners purchased a two story framed house and lot in Chicago, Illinois for $ 11,500. Petitioners resided in said house until 1961 when they moved to East Palo Alto, California. On June 8, 1961 petitioners contracted to sell their Chicago residence to Joshua and Gearldine Johnson for $ 12,500. Under the articles of agreement for warranty deed the Johnsons paid petitioners $ 1,500 with the balance, $ 11,000, payable $ 100 or more monthly, beginning on July 8, 1961, at a 6 percent per annum interest rate. The Johnsons were responsible for payment of taxes, special assessments, *298 all other charges and insurance and maintenance expenses on the property. Moreover the agreement provided that, when the Johnsons reduced the principal balance to $ 6,250, petitioners would deliver a warranty deed and take back said balance in a mortgage payable $ 100 per month at an interest rate of 6 percent per annum. In the event that the Johnsons defaulted upon their obligation, the agreement provided that they forfeited all previous payments made under the agreement and petitioners had the right to reenter and take possession of the premises. The Johnsons made all their required monthly payments from July 1961 through and including August 1972 but made no payments thereafter. At all times petitioners retained record title to the real property and did not transfer a warranty deed to the Johnsons. In an attempt to collect the remaining balance on the sales contract petitioners retained an attorney in Chicago. He was unsuccessful and petitioners decided not to sue the Johnsons on the agreement because their claim was worthless. In 1973 the house was vandalized and stripped to the bare walls and thereafter, also in 1973, the house burned down. The property was uninsured *299 at the time of the vandalism and fire. The City of Chicago demanded that the property be demolished or fully restored. Either alternative was economically infeasible for petitioners and, consequently, upon the advice of another attorney, and in an attempt to "get out from under" the property and to avoid "sinking" any more money into it, petitioners executed, on August 2, 1973, a quit claim deed of the property to the City of Chicago. The deed was recorded in Cook County, Illinois on August 14, 1973. On their 1973 Federal income tax return petitioners claimed a $ 4,000 charitable contribution deduction attributable to their grant of the realty to the City of Chicago and other cash contributions of $ 379. Additionally they claimed an $ 8,500 casualty or theft loss, less the $ 100 floor, attributable to the vandalism and burning of the two story building. Respondent in his notice of deficiency dated June 9, 1976 disallowed the above three deductions explaining as follows: (a) The deduction of $ 4,379.00 claimed for contributions is disallowed in full since you have failed to establish that you made any charitable contributions during the taxable year. * * * (b) * * * Since *300 you have failed to establish that the alleged loss giving rise to the deduction claimed resulted from a casualty or theft within the meaning of section 165 of the Internal Revenue Code and since in any event you have failed to establish that any deductible loss was sustained during the taxable year, the deduction claimed is disallowed in full. * * * OPINION Respondent contends that under Illinois real property law petitioners, in 1973, had only an equitable partial interest in the land with the major legal property interest belonging to the Johnsons. Therefore without a sufficient legal interest petitioners were unable to gift the land and/or to suffer any casualty or theft loss with respect to the building. Moreover, respondent asserts that, assuming petitioners retained in 1973 their legal interest in the property, their gift of the land to the City of Chicago was not complete as the City did not accept the property. Acceptance, the third essential element to a valid gift (donative interest and delivery being the other two elements), cannot be presumed where the gift is a dilapidated property and the mere recording of a quit claim deed is not sufficient *301 notice of the alleged gift to the donee. Furthermore, assuming a completed gift, respondent submits that petitioners have not established the fair market value of land gifted to the city. Also as petitioners' remaining cost basis in the property is $ 1,441 and as this amount must be allocated between the land and the building, the maximum possible theft or casualty loss petitioners suffered in 1973 must be some amount less than $ 1,441. Section 1.165-1(c)(1), Income Tax Regs.
Although not free from doubt, we believe that under the facts of the instant case an Illinois state court would determine that in 1973 petitioners had legal and equitable title to the property, Shay v. Penrose,25 Ill.2d 447, 185 N.E.2d 218 (1962); Eade v. Brownlee,29 Ill.2d 214, 193 N.E.2d 786 (1963); Miles Homes, Incorporated, of Illinois v. Mintjal,17 Ill. App. 3rd 642, 307 N.E.2d 724 (1974). Additionally as the property was sold in 1961 for $ 12,500 we believe that the fair market value of the land and building in 1973 was at least equal to petitioners' 1973 adjusted basis in said realty. Therefore under Illinois state law, as the land gifted had some *302 value, "[a] presumption of acceptance [of the gift] prevails where the conveyance is beneficial to the grantee, whether or not the grantee knows of its execution." Maciaszek v. Maciaszek,21 Ill.2d 542, 173 N.E.2d 476, 478 (1961). Thus we conclude that in 1973 petitioners had legal title to the realty and made a valid gift thereof to the City as well as sustaining a casualty or theft loss attributable to the vandalism and fire. Petitioners are entitled to deductions under section 165 and 170. Inasmuch as both of the deductions are ordinary in nature and it has not been established by petitioners that the fair market value of the land in 1973 exceeded their adjusted basis therein, we need not concern ourselves with an allocation of dollars between the two provisions. In short, we hold petitioners are entitled to a deduction equal to their 1973 adjusted basis in the land and building less the $ 100 floor of section 165(c)(3). We leave for the Rule 155 computation the determination of the adjusted basis. Finally, as petitioners have presented no evidence with respect to the alleged charitable cash contributions of $ 379 we have no alternative but to disallow *303 said claimed deduction. Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered under Rule 155.